UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **KIRANKUMAR MAHENDRABHAI PATEL**, <br><br> Petitioner, <br><br> v. <br><br> **KEVIN RAYCRAFT, et al.** <br><br> Respondents. | **2:26-cv-10482-TGB-EAS** <br><br> HON. TERRENCE G. BERG <br><br> **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

Now before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. Petitioner Kirankumar Mahendrabhai Patel ("Patel") is a 48-year-old citizen of India who has resided in the United States since January 4, 2022 with his wife and teenage daughter. He alleges he has been unlawfully detained in immigration detention since June 3, 2025, and seeks to be released or afforded a bond hearing.

For the reasons that follow, the Court will **GRANT** Petitioner's Petition for a Writ of Habeas Corpus and **ORDER** Respondent Kevin Raycraft, the Acting Detroit Field Office Director of ICE's Enforcement and Removal Operations, to release Petitioner by 5:00 p.m. on March 24, 2026, unless Petitioner has received a bond hearing under Section 1226(a) by that date.

## I. BACKGROUND

Petitioner Kirankumar Mahendrabhai Patel is a 48-year-old citizen of India who has resided in the United States since January 4, 2022 with his wife and teenage daughter. Pet., ECF No. 1, PageID.5, ¶¶ 1-2.

In a declaration appended to the Government's Response, Bevan Anderson, Deportation Officer with the Detroit Field Office of Enforcement and Removal Operations ("ERO"), explained that on January 4, 2022, Patel unlawfully entered the United States without being inspected and admitted or paroled by immigration officials, and was apprehended the same day, served with a Notice to Appear, and charged with being subject to removal under 8 U.S.C. § 1182(a)(6). Declaration of Bevan Anderson ("Anderson Decl."), ECF No. 4-1, PageID.48, ¶ 4.

Patel and his family also filed an application for Asylum, Withholding of Removal, and relief under the Convention against Torture ("CAT") on January 4, 2022. Pet., ECF No. 1, PageID.6, ¶ 16. They sought asylum "due to political persecution in his home country of India." *Id.* at ¶ 15. Years earlier, Patel was the beneficiary of an I-130 Petition for alien relative filed on November 4, 2013, by his sister who is a U.S. citizen. *Id.* Two years after entering the United States, on January 2, 2024, an immigration judge in Varick, New York denied Patel's applications for relief from removal and ordered him removed to India.

Pet., ECF No. 1, PageID.6, ¶ 16; Anderson Decl., ECF No. 4-1, PageID.48, ¶ 5.

Patel states that his previous counsel filed a Notice to Appeal the removal order to the Board of Immigration Appeals ("BIA") on January 11, 2024, but the BIA dismissed his appeal on July 31, 2024, due to filing defects which were not timely corrected. Pet., ECF No. 1, PageID.6, ¶ 17; Anderson Decl., ECF No. 4-1, PageID.48, ¶¶ 6–7. On October 21, 2024, Petitioner, through new counsel, filed a Motion to Reopen with the BIA based on ineffective assistance of his previous counsel, but that motion was denied on February 14, 2025.[1] Anderson Decl., ECF No. 4-1, PageID.49, ¶¶ 8–9; Pet., ECF No. 1, PageID.6-7, ¶ 17.

On March 12, 2025, Patel filed a Petition For Review ("PFR") with the United States Court of Appeals for the Second Circuit. Pet., ECF No. 1, PageID.7, ¶ 18; Anderson Decl., ECF No. 4-1, PageID.49, ¶ 10; *Patel v. Bondi*, 25-570 (2d Cir.). The appeal was fully briefed in November 2025, Resp., ECF No. 4, PageID.40, and remains pending with the Second Circuit. Anderson Decl., ECF No. 4-1, PageID.49, ¶ 10.

---

[1] The parties used different dates for the filing and rejection of the Motion to Reopen. *See* Pet., ECF No. 1, PageID.6-7, ¶ 17 ("On October 21, 2024 Petitioner . . . filed [the] Motion . . . The BIA denied [it] on February 14, 2025."); Anderson Decl., ECF No. 4-1, PageID.49, ¶ 9 ("On October 21, 2024, the BIA rejected the motion to reopen."). To the extent these dates may be material to the pending appeal regarding late notice, the Court does not address the issue as it is not material to the pending writ.

On June 3, 2025, Immigration Customs and Enforcement ("ICE") in Detroit arrested Patel, and he was detained at that time to execute his removal. Anderson Decl., ECF No. 1-1, PageID.49, ¶ 11. ICE obtained possession of a valid travel document for Patel and, on June 10, 2025, nominated him for removal to India via an upcoming charter flight. *Id.* at ¶¶ 12, 15. Patel immediately filed a Motion to Stay his Removal, which the Second Circuit granted on June 21, 2025. *Id.* at ¶¶ 13-14; Opinion, ECF No. 1-1, PageID.27-28. The Second Circuit explained that:

> There is an apparent Circuit split on the issue of whether prejudice is required where counsel has failed to file a timely notice of appeal, and this Court has not issued a controlling opinion on that question. Furthermore, the oral decision of the Immigration Judge in this matter has not been transcribed and is therefore unavailable for review, limiting our ability to assess the basis for the agency's decision.

Opinion, ECF No. 1-1, PageID.27-28. Patel has remained detained in ICE custody at Monroe County Jail in Monroe, Michigan since June 3, 2025. Pet., ECF No. 1, PageID.3, ¶ 8. Patel has never received an individualized bond hearing before an immigration judge. *Id.* Patel states he has no criminal convictions. *Id.*

On February 11, 2026, Patel filed the instant habeas corpus petition. *Id.* The petition was fully briefed on March 2, 2026. *See* ECF Nos. 1, 4, & 6. Petitioner argues he has been detained unlawfully and for an unreasonably long period of time without an individualized determination of danger or flight risk, in violation of both the

Immigration and Nationality Act ("INA") and constitutional due process. He seeks to be immediately released, or in the alternative, to be granted a bond hearing in which the government would bear the burden to show that he is a danger to the community or a flight risk.

## II. LEGAL STANDARD

### A. Habeas Corpus

A district court may issue a writ of habeas corpus to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

### B. Immigration and Nationality Act

Two provisions of the Immigration and Nationality Act regarding the detention of noncitizens are in issue in this petition: 8 U.S.C. § 1226(a) and § 1231.

Pursuant to § 1226(a), a noncitizen *may* be detained "pending a decision on whether [the person] is to be removed from the United States." *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) ("U.S. immigration law . . . authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under § 1226(a)[.]"). Noncitizens detained pursuant to § 1226(a) may seek an individualized bond hearing in immigration court at the outset of their detention. *See id.* ("The Attorney General 'may release' these aliens on bond[.]"); *see also* 8 C.F.R. §§ 1003.19(a), 1236.1(d).

Pursuant to § 1231(a), once a noncitizen is ordered removed, the noncitizen "shall" be detained "[d]uring the removal period," as defined in the statute. Such removal period is generally a "period of 90 days" beginning on the latest of either, as relevant here, (i) the date the order of removal becomes administratively final, or (ii) the date of a reviewing court's final order if the court ordered a stay of the removal. 8 U.S.C. § 1231(a)(1). If the noncitizen is not removed within the 90-day period, the noncitizen is subject to supervised release. § 1231(a)(3). However, a noncitizen may be detained beyond the 90-day removal period if the noncitizen acts to prevent his removal, is inadmissible under § 1182, is considered a "criminal alien," or has been determined to be a risk to the community or unlikely to comply with the order of removal. § 1231(a)(6). While the government has discretion to provide bond hearings under § 1231(a), it is not required to do so. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 582 (2022).

### C. Due Process

"The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Courts have expressed concern that detention under § 1226(a) is "frequently prolonged" because, absent release on bond, "it continues until all proceedings and appeals are concluded," and "lasts through the initial removal determination proceedings (which themselves can take

6

months or years) and all inter-agency and federal court appeals, even where an individual has prevailed and the Government appeals." *See Velasco Lopez*, 978 F.3d 842, 852 (2d Cir. 2020). While "[t]here is no bright-line rule for when detention becomes unreasonably prolonged under § 1226(a), . . . [t]he longer the duration of incarceration, the greater the deprivation." *Id.*

As to detention pending removal pursuant to § 1231(a), the Supreme Court held in *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Thus, such detention may not continue indefinitely, but only for "a period reasonably necessary to secure removal." *Id.* at 699–701. "[T]he habeas court . . . should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* In any event, the Supreme Court concluded that a total of six months from the entry of a final detention order is a presumptively reasonable period of time for the government to effect removal. *Id.* at 701. The Supreme Court explained that,

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to

> shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701–02. That being said, the Supreme Court indicated that a noncitizen need not show that "deportation will prove 'impossible'" as "this standard would seem to require an alien seeking release to show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable—which demands more than our reading of the statute can bear." *Id.*

## III. DISCUSSION

The parties dispute the government's statutory and constitutional authority to detain Petitioner. Petitioner challenges Respondents' decision that Petitioner is subject to mandatory detention without bond under § 1231, which does not require a bond hearing, because "Petitioner is subject to an administratively final order of removal based on his inadmissibility under § 1182." Petitioner argues he has been unlawfully detained for the past nine months without a bond hearing as required pursuant to § 1226(a). *See Martinez v. Larose*, 968 F.3d 555, 557 (6th Cir. 2020) ("[A]liens detained under § 1226(a) are entitled to bond hearings before an immigration judge (IJ) under the federal regulations, while aliens detained under § 1231(a) do not have a right to a bond hearing."). Although Petitioner contends that he is unlawfully detained pursuant to

8

§ 1226(a), the Government does not engage this contention and maintains only that "[P]etitioner is lawfully detained under § 1231."

### A. Section 1231(a)(6)

The Government's position that Petitioner is lawfully detained under § 1231 is understandable in view of the fact that Petitioner has been ordered removed, and that section permits mandatory detention "[d]uring the removal period." *See* 8 U.S.C. § 1231(a)(2)(A). But that removal period, which generally lasts for 90 days, is defined by statute as commencing at different points in time, depending on the posture of the noncitizen's case. According to Section 1231(a)(1)(B), the "removal period *begins* on the *latest* of the following" events:

> (i) The date the order of removal becomes administratively final.
>
> (ii) *If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien*, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added).

Here, Petitioner's removal order first became administratively final on February 14, 2025, when Petitioner states that the BIA denied the Motion to Reopen. At that time, the Government had authority to detain him pursuant to § 1231(a)(B)(i) to effectuate his removal. But Patel was not removed during the 90-day "removal period," which elapsed mid-May 2025. The statute "sets forth two options for a non-citizen who

9

was not removed during the removal period." *Yi Mei Zhen v. Doe*, 2025 U.S. Dist. LEXIS 151787, at *10 n.5 (N.D. Ohio Aug. 7, 2025) (citation omitted). First, "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *See* 8 U.S.C. § 1231(a)(3). Alternatively, certain categories of noncitizens, such as those inadmissible under § 1182, "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *See* 8 U.S.C. § 1231(a)(6). Because Patel was found inadmissible under § 1182, the Government arguably had authority, on June 3, 2025, to detain Patel beyond the 90-day removal period under § 1231(a)(6).

However, prior to the date of his arrest and detention on June 3, 2025, on March 12, 2025, Petitioner filed a Petition For Review ("PFR") with the United States Court of Appeals for the Second Circuit. After he was arrested and detained, Patel filed a Motion to Stay his removal on June 16, 2025, which the Second Circuit granted on June 21, 2025. *See* Exhibit A, ECF No. 1-1, PageID.27-28; ECF No. 4-1, PageID.49. This appeal is still pending, and so is the stay. Therefore, because in this case "the removal order is judicially reviewed and [the] court order[ed] a stay of the removal," the period of removal is not running at this time. It will not begin, under Section 1231(a)(1)(B)(ii), until "the date of the court's final order." *See* § 1231(a)(1)(B)(ii).

10

So the mandatory detention authority that applies during the removal period is not available. *See Yi Mei Zhen*, 2025 U.S. Dist. LEXIS 151787, *10 n.5 ("[I]t is undisputed that the removal period began on the date the order of removal became administratively final . . . when the Sixth Circuit denied her petition for review."); *Rodriguez Figueroa v. Garland*, 535 F. Supp. 3d 122, 126 (W.D.N.Y. Apr. 26, 2021) ("Petitioner's detention is not governed by § 1231, because he has been granted a stay of removal while his PFR is pending in the Second Circuit."); *Hechavarria v. Sessions*, 891 F.3d 49, 56 (2d Cir. 2018) ("Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review."), *as amended* (May 22, 2018); *Bautista v. Sabol*, 862 F. Supp. 2d 375, 379 (M.D. Pa. May 24, 2012) ("Contrary to both the Petitioner's and Respondents' assertions, § 1231 is inapplicable to the instant matter" because "an alien does not fall within § 1231's 'removal period' until the occurrence of the latest statutorily-prescribed triggering event"). Here, because the Second Circuit has not yet issued its final order, the authority to detain Patel cannot derive from § 1231.

Thus, at this juncture, it does not matter that the Government is ready to effectuate Patel's immediate removal if the Second Circuit issues a decision rejecting Patel's Petition for Review.[2] If such a result occurs,

---

[2] Respondent's reliance on *Martinez v. Larose*, 968 F.3d 555 (6th Cir. 2020), is misplaced. Unlike Patel, Martinez was detained pursuant to § 1231 because he "already ha[d] a final decision that he [would] be removed," which the appellate court had no authority to judicially review.

the Government would then have statutory authority to detain Patel to effectuate his removal during the newly-begun removal period.

Because Petitioner cannot be statutorily detained under § 1231(a), the Court need not address Petitioner's constitutional arguments attacking the unreasonable length of such detention and addressing whether the date of removal is "reasonably foreseeable."

### B. Section 1226(a)

The question, therefore, is what authority the Government has to detain Patel, if not pursuant to § 1231. Petitioner acknowledges he may be detained under § 1226(a), but only after a bond hearing to determine whether Petitioner represents a danger or risk of flight. The Government did not discuss its authority to detain Petitioner pursuant to § 1226(a) or any other provision of the INA because it assumed it had authority under § 1231.

Petitioner has been detained for nine months in ICE custody without ever receiving a bond hearing. He is entitled to such a hearing under § 1226(a), so his continued detention without a hearing violates the INA. *See Arredondo-Silva v. Raycraft*, No. 2:25-CV-13674-TGB-KGA,

---

968 F.3d at 561, 563 n.6. In addition, the appellate court had vacated the stay of the removal pending appeal, *id.* at 558, and noted that the only issue in the pending appeal was "one of eligible locations for removal, not removability itself," *id.* at 560. Here, on the contrary, the appellate court stayed Patel's removal pending his appeal of the BIA's removal order denying not only his withholding claim, but also his asylum and CAT claims.

2025 WL 3625781, at \*7 (E.D. Mich. Dec. 15, 2025) ("[B]y denying Petitioner a bond hearing [under § 1226(a)], Respondents have violated the INA."). Furthermore, the prolonged length of his (unlawful) detention also warrants additional procedural safeguards, in the form of a bond hearing in which the government, as opposed to Petitioner, bears the burden to prove that Petitioner is a danger or risk of flight. *See, e.g.*, *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1183 (D. Colo. July 19, 2024) (finding that the prolonged detention of a noncitizen under § 1226(a) "enhanced [the petitioner's] individual liberty interest, warranting additional procedural safeguards" in the form of a bond hearing in which the government must bear the burden to justify detention); *Roberto M.D. v. Garland*, 2021 WL 7161831, at \*8 (D. Minn. Dec. 29, 2021) (ordering a new bond hearing with a shifted burden where the petitioner "face[d] the prospect of months-long detention" pending appeal). Here, Petitioner has already been detained for nine months, longer than the presumptively valid six-month detention period for noncitizens with *final* removal orders. *See Zadvydas*, 533 U.S. at 701. It must also be noted that, unless released, Patel "faces the prospect of months-long detention," *see Roberto*, 2021 WL 7161831, at \*8, if he should prevail on appeal, have his case remanded to the BIA and possibly ultimately to an immigration judge, for further proceedings. On the other hand, if his appeal is denied, his lawful deportation may proceed in a timely manner.

13

## IV. CONCLUSION

For the foregoing reasons, the Court holds that by failing to afford Petitioner the opportunity for a bond hearing, Respondents have violated Section 1226(a) of the INA. Accordingly, **IT IS ORDERED** that Petitioner's habeas corpus petition is **GRANTED**.

**IT IS ORDERED** that Petitioner shall be afforded a bond hearing before an immigration judge on or before 5:00 p.m. on March 24, 2026, or be released. The government shall bear the burden of establishing by clear and convincing evidence that detention is justified under § 1226(a).

**IT IS FURTHER ORDERED** that, within fourteen (14) days of this Opinion and Order, Respondents shall file a status report certifying their compliance with this Opinion and Order and detailing the results of the bond hearing.

**IT IS SO ORDERED**.

Dated: March 17, 2026          /s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE

14